GANLY v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Appellate Division, Second Department.  November 18, 1910.)

Appeal from Special Term, Westchester County.

Action by Catherine Ganly, as administratrix of John Ganly, against the Union Railway Company of New York City. From an order granting a motion to set aside the verdict for plaintiff and for a new trial, she appeals. Reversed, and verdict reinstated.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, THOMAS, and CARR, JJ.

Edwin S. Merrill, for appellant.
Bayard H. Ames and John Montgomery, for respondent.

PER CURIAM. Order reversed, with costs, and verdict reinstated.

THOMAS, J. (dissenting). Brown Place runs into the Southern Boulevard, where there is a car line, the southerly track whereof is east-bound. Plaintiff's decedent, driving three horses before an oil wagon, was thrown from his seat and killed by a collision of the left side of the forward car step with the hub of the right forward wheel. The plaintiff's statement is that the decedent, after driving on the right or westerly side of Brown Place, came to its intersection with the Boulevard, where, swinging southeasterly across the west-bound track onto the east-bound track, he kept rounding back toward the north until he reached the easterly crosswalk of Brown Place, when his wagon was clear of and about parallel with the east-bound track, and that when so placed the car came up from behind, passed his rear wheel, and hit the forward wheel. In other words, the contention is that the wagon at the crosswalk was clear of the east track, but near enough alongside it that the car hit it. The defendant's story is otherwise. It is that the decedent's wagon was never on the east-bound track, that it was turned onto the west-bound track, and that just as the car came near the decedent swung his horses across the east-bound track ahead of the car, whereupon the horses came into contact with the car. The decedent then swung the horses to the left and north, and the front wheel locked with the step. The plaintiff

had a verdict of $12,000, which the court set aside on the ground of contributory negligence.

The essential question is whether the car overtook the wagon, or the wagon was swung into the car. On this issue the plaintiff called two witnesses, and the defendant five, including the conductor, the motorman, another employé of the defendant, and two outsiders, one of whom had worked for the defendant. Justice Morschauser seems to have set the verdict aside upon the ground that the decedent did not look for an approaching car, and that he took no precautions to avoid collision. If the wagon was ahead of the car, and straightened in a course paralleling the track, and the car came along and hit it, it is immaterial whether the decedent looked, and I think that in such condition the court could not say that he did not use proper care to avoid the car. So the matter comes back to this: Where and whither was the decedent driving at the time? The Southern Boulevard is 80 feet wide, and Brown Place 50 feet wide. Decedent approached the Boulevard on the downgrade, with a wagon weighing 2 tons and a load of oil weighing 3½ tons, and there is a descending grade to the east on the Boulevard. The collision occurred near the easterly crossing of Brown Place, although the car carried the wagon along some distance, variously estimated. There was sufficient room on the southerly side of the tracks for driving, and the decedent expectably would cross both tracks and drive there, rather than drive onto the southerly track and then haul to the northerly of it, where he would be in the way of west-bound cars and traffic. However, plaintiff contends that the decedent did, after entering on the east-bound track, leave it toward the north.

Mahon, a watchman, said that he was on the northerly side of the avenue, west of Brown Place, and 50 feet from the accident, and was attracted by the crash, saw the car and truck as they continued for 50 feet after the collision, and that:

"The car and wagon were parallel; they were touching each other all along." "When I first noticed the horses, they were pointed, going the same way as the car was, going east, straight." "The front part of the step was up against the hub of the wheel."

Although this witness looked rather late to help in locating the team and car previous to the collision, his evidence would help the plaintiff, were it not for other evidence given by him before the coroner, and which he approved in great part on the trial; for he said on the former occasion:

"I think he got struck just as soon as he got onto the track. He was just about going onto the track, the way he was hit."

Now, read this in connection with his evidence, where he says that the forward wheel was in the right track. In this he seems to help the defendant's position. All in all, his evidence is not very helpful.

The witness Spooner was standing easterly of the place of accident, on the corner of Brook avenue, which is a short block away. He says he was waiting for a car, and saw the car in question a block away, to the west of Brown Place, and the wagon came into the Boule-

vard from Brown Place. When the car was 200 feet distant, the wagon went onto the east-bound track and—

"went to turn off of the track towards the north, that is, towards the left, * * * and * * * the car * * * was * * * at the corner when the wagon turned. The car came along. When it was turning off, it glanced the hind wheel of the truck, and locked into the front wheel of the truck, and shoved it along about 50 feet."

On cross-examination the witness said:

"This man was driving straight ahead in the east-bound track. He did not drive very far before the car struck him; about 10 feet. * * * When it was in that position, all of his horses were not on the east-bound track, coming towards me. They were turning off the east-bound track to the left. * * * He got all on the east-bound track, and continued right on around, and then turned the horses in again to the left. While he was making this swing around, the car locked its front end with the front hub of his wheel— the hub of his front wheel. At the moment the car struck or hit his front wheel, he had the horses headed in the left direction: sort of toward the northeast his horses were headed. They had not gotten all off the east-bound track. There were two of them off, and one was partly on that east-bound track."

This witness departed some from his evidence at the coroner's inquest in other particulars. According to this witness the truck was on the east-bound track, and the car hit the right front hub, and horses were still in part on the track. I confess that I do not see how this could be.

The motorman's evidence is to the effect that decedent's horses and wagon were never on the east track, but that, when 20 feet in front of the car, the horses were pulled directly toward the car, so that the horses came up against the front pane of glass of his window when they jumped off, and in doing so swung the hub in and locked the step of the car. I cannot understand how the hub could engage his step after the horses hit the vestibule, but the motorman dwells on this at length.

The witness Turner was smoking on the rear platform of the car, and by mere accident was looking out, and he says the wagon went onto the west track, and—

"he had his horses to this side, from the west side track. * * * When I saw him turn his horses into what I call the west-bound track, I could not see any further."

But he says the wagon did not get on the east-bound track, but— .

"his front wheel of the oil wagon touched the bottom of the first step where the motorman was standing."

He consoled with the widow, and testified for defendant, without disclosing his intended evidence. It is possible that he told the truth, but I think that he was not aware of it.

The conductor adds little. He says the wagon went onto the west-bound track, but that he did not see it on the east-bound track.

The witness McAndrews was standing on the left side of the motorman, learning the route. He says that the wagon turned into the Boulevard and onto the west-bound track, and—

"made to go over on the other side of the street, and * * * just as the car was coming on a way he came on the track, the east-bound track, that the

car was running on. The horse that was on the *left-hand* side—some part of the harness—hit the glass in the vestibule and broke it." "When the nearest horse found the car coming on, he just turned around and hit the glass. * * * Then we came on at the time, and the hub of the wheel locked on the left-hand front step of the car."

He says that it was the slanting pane in the vestibule that was broken, and that the hub of the wheel was over the step.

The witness Smith, a piano maker, was standing on the northeast corner of the Boulevard and Brown Place. He was attracted by the motorman's "holler," and then saw—

"the horse's hame of the *near* horse just strike the vestibule of the car; then I looked underneath, and I saw the man underneath the car. Q. Tell us, please, at the time you heard this holler, and looked, and saw the window broke, what was the position of the truck with reference to the car? A. Well, the position of the truck—the two front wheels was in the west-bound track, one hind wheel was in the west-bound track, and the opposite hind wheel was between the west-bound track. The car was on the east-bound track. The two front wheels was in the west-bound track; the inside hind wheel was in the west-bound track between the two rails; the outside wheel was between the west-bound track and the north curb. The wagon stood catacornered; the back of the wagon stood northeast—I should say northwest; the front of the wagon—it was not straight, but catacornered; it stood pretty near it." "I did not see any parts of the wagon and the car come together."

He significantly adds that he noticed that the decedent drove on the wrong side of the street. After speaking of the hame breaking the glass, he says that the horses "did swing a little to the left away from the car." This was certainly a very good witness for the defendant. The evidence of this witness has some support from plaintiff's witness Mahon, to which I have already referred, and accords generally with the evidence of the defendant's other witnesses, so that the opposing evidence is in most part that of Spooner.

The evidence so much favors the defendant that justice requires that the case should be again submitted to a jury. If the decedent was turning from the west to the east bound track, and hit the car, he must have been negligent, and so the trial justice was justified in granting a new trial. In addition, in such case, the defendant was not negligent.

I think the order should be affirmed.